The next case on the call is Agenda No. 2 No. 128-687 People of the State of Illinois v. Clayton T. Marcum Counselor to the Appellant be prepared to receive Your Honors, may I please the court? Counsel? My name is Edward Wittrig, I'm with the Office of the State Appellant Defender, and I represent the petitioner appellant Mr. Clayton Marcum on this appeal. So for the first argument, the prosecutor clearly violated Mr. Marcum's statutory right to a speedy trial, and this court, under the plein air doctrine, specifically Rule 615A, should excuse Mr. Marcum's imperfect attempts to raise the matter before the circuit court. To be sure, the prosecutor's conduct was not proper here, and the state should not receive any benefit from it. At the time he filed the initial charge, the prosecutor was consciously aware of the basis for the two aggravated domestic battery counts of a later file. The prosecutor knew about Mr. Marcum's purported relationship with Mr. Rubin, the prosecutor knew about the alleged acts that Mr. Marcum committed, and the prosecutor knew about Mr. Rubin's specific injuries. Despite knowing this, inexplicably, the prosecutor chose to file only a single count of aggravated battery, and then waited for over nine months, right before the start of the planned trial, before finally filing these two counts of aggravated domestic battery. It was too late. Under the law, the later filed charges shared the same speedy trial term as the initial charge, and the delay on the initial charge could not be attributed to Mr. Marcum on the later charges. So by unreasonably waiting for over nine months, and for waiting outside the 120-day speedy trial term, before filing these aggravated domestic battery charges, the prosecutor violated Mr. Marcum's statutory right to a speedy trial. Now, Mr. Marcum did not properly preserve this claim by filing a written motion before the circuit court, and recognizing this, he has invoked the second prong of the plain air doctrine before this court, again, specifically Rule 615A, and that allows, and has long allowed for the review of errors affecting substantial rights. And it's important that Mr. Marcum's conduct here, in imperfectly raising an argument before the circuit court, is more akin and consistent with the traditional understanding of forfeiture, the failure to time with a certain right, as opposed to waiver, which is the intentional relinquishment of a known right. And Mr. Marcum did not intend to relinquish any rights here. In fact, he notified the circuit court about his objections to the prosecutor levying these new charges. He orally objected to the enhanced offenses, stating he did not want to proceed on them. He questioned the circuit court specifically about his speedy trial calculation. He complained that he had already been in custody for close to a year and that there would be additional delay because of these new charges. And he also, importantly here, relayed his fear that allowing the state's position here of filing new charges, they could keep refiling new but different charges and keep him in custody indefinitely. So despite there being a clear violation of Mr. Marcum's rights and a clear indication on the record that he attempted to raise an objection, the state nevertheless suggests that he should be denied any relief. And it points specifically to the statutory provision 725 ILCS 5 slash 114 1B, the motion to dismiss statute, and argues that it should be interpreted to resolve the waiver. What is the language of that statute? The language says any motion not filed within such time or extension thereof should not be considered by the court in the grounds, therefore, except certain subsections are waived. So the legislative language specifically addresses this issue? The legislature does use the term waive, but as Mr. Marcum pointed out, it's... We could talk about waiver and forfeiture, but if it's not raised in the trial court, it can't be raised later. The specific language of the statute does use the term waive. But Mr. Marcum's point here on appeal is that waiver and forfeiture have long been used interchangeably. And so looking even at the plain language of that statute, one cannot... The legislature's use of the term waive does not have a specific meaning of waiver of a known relinquishment of a potential right. Counsel, in addition to the reference to waiver, it says shall not be considered by the court, right? It does say shall not be considered by the court, but that's specifically towards the circuit court. And that doesn't necessarily mean that there was any intention to prevent later reliance on the plain error doctrine or raising it before an appellate court for review. Can you give us any examples where we have a situation where we have a statutory right that's been held to be structural error if it's violated? And I do not have a specific example of a statutory right that that would amount to second problem plain error. But my argument for that is that speedy trial right and the procedural right to a speedy trial is different. That it's not similar to, for instance, like a jury polling issue or Rule 431B. And the speedy trial error is more closely tied to the constitutional right than those other measures that are designed to protect against underlying constitutional rights. And I look specifically to the language of the United States Supreme Court in Barber itself where it talks about how the constitutional right to a speedy trial is a unique right and that it is. But this is not that. This is statutory. It's not we're not talking about one's constitutional right to a speedy trial, correct? Oh, yes, Your Honor. I did not raise a constitutional violation before this court. But I think it's still important to look at the constitutional claim of a speedy trial because it is so closely tied to the statutory rights that embody and flesh out the right to a speedy trial. Because speedy trial rights, as recognized by Barber, it's very difficult to discern when there's been a violation of or it's more of a vague concept. And so it necessitates these protections that are created by legislatures to protect against a right in a way that other statutory provisions are not required. Well, we know that structural error has only been found in limited circumstances, right? So how is what happened here akin to a situation where we have complete denial of counsel, trial in front of a biased judge, things of that nature? Yes, Your Honor. But I do think that this court has applied. This court is not limited to applying second prong plain error to the short list of errors that have been identified by the United States Supreme Court as structural error. And this court has found second prong plain error ranging from denial of a pretrial continuance in People v. Walker, which is cited in my reply brief, through errors that occurred during the trial process itself, such as the jury oath requirement, and that was People v. Moon, to violations in sentencing of one act, one crime doctrine. Well, in Walker, though, that was a situation where the trial court failed to exercise its discretion, right? And can you please repeat that question? In Walker, wasn't that a situation where the trial court failed to exercise its discretion, not a situation where we found structural error because a continuance wasn't granted? Yes, Your Honor. The circuit court abused its discretion by refusing to take under certain consideration the factors it was supposed to and whether or not it should grant a continuance. Counsel, what about this scenario, though, affects the integrity of the judicial process and confidence in what happened at trial, such as in People v. Moon? That was the issue there. Yes, Your Honor. Another aspect of a speedy trial right is that it's not – it does operate to protect against – or to protect a defendant's rights during the trial because undue delay can cause oppressive pretrial incarceration and it can affect potentially different defenses. And so it has different interests, and it also is meant to protect the public's right to justice as well. And so because of this broad spectrum of rights that it's supposed to protect, it does become more difficult to equate it with, like, harmless – difficult to find prejudice, and so it is more susceptible to harmless error review. I do also want to address this court's decision in People v. Pearson, and I think it's important that the Pearson decision itself does not address plain error. It actually is a very narrow holding. The appellate court held in that case that to preserve a speedy trial claim, if there was a post-trial general motion, that was sufficient to preserve it under the statutory provisions, and this court found that that wasn't true. The statute does require a pretrial motion, but it's well-established that if a defendant does not invoke some sort of doctrine that can excuse a forfeiture, such as plain error or ineffective decision to counsel, that their failure must be honored, and there's no indication that the Pearson defendant relied on such a doctrine. So, of course, in that case, the failure to comply was honored, and there was no reason for this court to look into if there was any distinction meant by the legislature between waiver and forfeiture, because quite simply, that wasn't an issue. I also want to address Argument 2 as well. In Argument 2, Mr. Markham contends that the circuit court did not substantially comply with Rule 401, and that due to the deficient admonishments he received, he did not knowingly, intelligently waive his right to counsel. Now, looking at Rule 401, the specific language, it requires that before accepting the defendant's waiver of his constitutional right to counsel, the circuit court must admonish him in open court and ascertain that he understands the nature of the charges against him, the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences, and it also requires admonishment and understanding of the right to counsel itself. But here, the circuit court's admonishments fell far short of that mark, and the record reflects that Mr. Markham, rather than actually understand what charges and penalties he was facing, was thoroughly confused throughout this entire proceeding, prior to trial and even into trial and sentencing. So, looking at his arraignment first... Didn't the court tell him that he could be subject to a 14-year sentence? Yes, Your Honor. So, why is that different than two 7-year sentences that are consecutive? When a defendant is waiving his right to counsel and attempting to make a realistic determination on his potential prison exposure, knowing that to avoid 14 years in prison, you have to be acquitted of both counts, is different than knowing that the only way you could actually be sentenced to 14 years in prison is if you receive a conviction on both counts, given a maximum sentence. Excuse me. Are you suggesting that the defendant proceeding pro se understood the nuance that you're just explaining now? I mean, I'm just basically asking a practical question as to what's the difference in terms of the understanding of an ordinary person between 14 years and 7 plus 7 years, which also equals 14. Sorry. Sorry, Your Honor. I think it's important here that Mr. Markham did not understand this possibility of consecutive sentencing. And so he clearly didn't understand that. But I think it's important that he should have been able to get informed of that by the circuit court. He didn't understand the 14 or he didn't understand 7 plus 7? He didn't understand 7 plus 7. Okay. And my argument before this court is that he was required to understand that by the plain language of the rule that requires admonishment and understanding. How is that different from – how is it different, practically speaking, if he's sentenced to 14 years or if he's sentenced to two consecutive 7-year sentences? How is that practically different? Well, as to how his actual prison term operates, there isn't a distinction there. But as to proceeding to trial, it could make a difference as to specific defenses. How? There was – between the two different acts of punching and stomping, there was also allegedly Mr. Rudin falling down the stairs. So there could be potentially a claim of consent as to count one, but that wouldn't necessarily apply to count two. And there could be an argument that the stair – falling down the stairs and the stomping actually caused all of Mr. Rudin's injuries, for instance. And so knowing the range for each specific count matters when a defendant is making this assessment of whether or not that they need to proceed to trial with the assistant counsel or whether if they want to retain control to perhaps conduct specific defenses. Well, and I think also going along with that same point, it's also important here that he – not only was he not informed about consecutive sentences, he was later told that they would not apply. He was specifically told that he would only receive one sentence. And this occurred during a time where – a pretrial where he still had the opportunity to get assistance of counsel. The circuit court was going through the admonishments. Counsel, do you agree that he did not get a sentence consecutive or otherwise that's greater than the amount that the judge suggested he could receive if he was convicted? Do you agree on that point? I'm so sorry, Your Honor, but could you please repeat that question? Okay. The judge told him he could get up to 14 years, right? Yes. And he didn't get a sentence that was greater than that, right? Yes, Your Honor. Okay. That actually – I'm so sorry to backtrack here, but that is actually a little bit complicated given that the appellate court has remanded for resentencing. And there is a potential – if this court does remand for resentencing, there is potential issues with Mr. Markham being extended term eligible on the lesser offenses and the possibility still that consecutive sentencing may apply. And I also point out in the opening reply briefs that the record establishes that Mr. Markham actually also struggled with understanding the nature of the charges. He had to ask at every appearance what the nature of the charges were. And it wasn't until finally the eve of trial where he could finally repeat back to the circuit court that it was aggravated domestic batteries. At arraignment, he interrupted the admonishments, asked if they were aggravated batteries and was told that they weren't. At the preliminary hearing, again, he asked if they were aggravated batteries with the intent at any time to do bodily harm. The circuit court then incorrectly told him it was domestic battery. And then he had to ask, as I alluded to before, again at trial, what the actual charges were. And he finally at that point could repeat that they were aggravated domestic batteries. So if there are no other questions at this time, then Mr. Markham asked that this court vacate his convictions and sentences for point one and alternatively remand for a new trial that affords him his constitutional right to counsel or a knowing waiver of that right for argument two. Thank you for your time. Thank you, counsel. Counsel, please. May it please the court. I am Assistant Attorney General Gopi Kusum on behalf of the people of the state of Illinois. I'd like to just pick up where counsel left off on the rule 401 question before the court. The record shows that the trial court substantially complied with rule 401. Starting with the nature of the charges, there was actually strip compliance. The trial court told defendant the actual charges, aggravated domestic battery, and defendant said he understood them at each time. And so there was... The acknowledgments were imperfect. The sentencing acknowledgments were imperfect in that they omitted the consecutive sentencing component of it. The other imperfection was that they told defendant that he faced a greater lifetime MSR term than he actually faced. But I think it might be the court's decision as a kid, but the court has certainly looked at what effect did a defendant who thinks he's facing a greater charge or a greater sentence, there's no indication that that would affect a defendant's decision to waive counsel. And the reason is because we are looking at what the defendant knew and what the defendant understood at the time that he waived his right to counsel and exercised his fundamental constitutional right to self-representation. And where the defendant knows and understands the sentencing exposure, if he thinks that he's going to be in prison for longer and nevertheless risks going to trial, then there's no prejudice to the defendant. Here, the defendant knew how much time he could potentially spend in prison, as Justice Cunningham pointed out. And nevertheless, he wanted to proceed per se. I will note that defendant proceeded per se earlier when the original charge was the one the prosecutor was pursuing. And at that time, the record shows that he persisted in proceeding per se when he faced a 10-year maximum. And then once the new charges were provided and the 14-year maximum was told, he still nevertheless said he wanted to proceed per se. In this court's decision in Wright, even where the trial court had understated the maximum penalty by 15 years, this court found substantial compliance. There's no reason to think that in this case, where the defendant actually knew the true maximum, as the appellate court here observed, he would have made a different choice. The record as a whole is what we look at, and we look at whether these missteps in the admonishments or the minor errors in the admonishments actually affected the defendant's decision to waive counsel. And there's simply no indication on this record the defendant's decision to waive counsel was centered around the amount of time that he would spend in prison or how he would spend that time in prison. He repeatedly rejected plea offers from the state because he thought 14 years was too long, but nevertheless persisted in proceeding per se. The only record evidence we have as to the reason he wanted to go per se is from the earlier proceedings where he files a motion saying that his appointed counsel was not filing bond motions, he didn't like the way he was treating him. And then, as counsel pointed out in the reply brief, the motion was read into the record, except that defendant ended up summarizing it. He summed it up and said many other things that counsel did. The motion's not in the record. We actually don't have a record of proceedings on what happened on the two hearings at which the trial court discussed the right to counsel and the original charges, what defendant had said, what counsel had said about the relationship. So we really know nothing on this record other than the fact that defendant was dissatisfied with his attorney, and that's the reason he proceeded per se. So like this court's many decisions, in Reese, in Wrights, in Haynes, and Coleman, this is not a circumstance where the trial court's admonishments did not substantially comply with the rule, and the defendant did not knowingly and intelligently waive his right to counsel. The only case... He did. I think there are a couple points there. The question is, under Rule 401, is what did the defendant understand at the time he waived his right to counsel? So we are looking at the admonishments that the trial court has given and then what the defendant says at that time and says he understands. There's no question that the defendant was confident. There's no suggestion that he was not familiar with the criminal process. This person has 12 prior convictions, including 10 which relate to batteries, domestic, aggravated, others. And so this is a defendant who is very familiar with these types of charges. And at the time that he waived his right to counsel, he told the court that he understood. At later points, he asked questions in the course of exercising his right to self-representation. But every time a pro se defendant asks questions about the law or tries to sort of understand the complexities of the criminal process, the trial court doesn't need to question every time and then confirm again, well, do you still want to waive counsel? The trial court doesn't have this ongoing duty unless there's something really changing where the defendant has shown that he can't understand them or something else that's not in his record that would demonstrate that he really doesn't want to waive counsel anymore. Otherwise, the trial court would have to sort of checkbox every time and ask him every time, do you still want to represent yourself? And the reason the court has this substantial compliance requirement under Rule 401 is because there is this competing fundamental constitutional right the defendant has. And there are pieces like Feretta and others that have talked about how we don't want trial courts to infringe on that right by constantly questioning a pro se defendant's decision. And so we look at the time of the waiver. And here, the trial court, at the time of the waiver, substantially complied with the rule, and the defendant said he understood. I would note that on the nature of the charges, even at the preliminary hearing, even at the very same hearing at the arraignment, the defendant said specifically that he recognized it was a different charge. And then at the preliminary hearing, he offered reasons why the prosecutor was incorrect as to the nature of the relationship that supported the domestic charge and the severity of the injuries and showcased his defense, which was that the defendant's injuries resulted from an underlying liver condition rather than his acts against the victim, the victim's injuries, excuse me, his acts against the victim. And so we know here on the record that he understood what he was facing. He understood the charges, and he nevertheless decided to be insistent on proceeding. Ms. Cashel, can I direct you to the speedy trial portion of your argument? The speedy trial. Could I ask you to address the speedy trial portion of the argument? Absolutely. Our position is that the General Assembly has provided for the waiver of the statutory speedy trial right. It stated that plainly in Section 114. This Court has interpreted that term as waiver. Decades and decades of precedent preceding Pearson had interpreted this term as waiver. So, Ms. Cashel, you acknowledge that there was a speedy trial violation? Yes, we do. And that speedy trial is a substantial and fundamental right? The constitutional right to a speedy trial, the Sixth Amendment right, is a fundamental constitutional right. And the distinction here between the constitutional right and the statutory right that was raised in this case, if you could expand on that? Sure. So this Court has said, again, for decades, that the statutory right is not coextensive with the constitutional right. So what the General Assembly has done is balance the two compelling interests, a defendant's interest in speedy resolution of his case alongside the prosecution's interest, the state's interest, the public's interest in prosecuting crimes. And so in balancing that and in considering the constitutional right, the General Assembly decided that it would enact a statutory speedy trial right, that if the defendant asserts that right in the appropriate time and the appropriate manner as defined in the statute, would give the defendant the right to discharge. But what the General Assembly was recognizing was that the public still has an interest in prosecution, so it squarely placed the burden on the defendant to assert his rights in the way that the General Assembly provided. But the Court has said repeatedly that the statutory right is not the same as the constitutional right. So when the 120 days has passed, that does not necessarily mean that there has been a constitutional violation. That does not necessarily mean that the defendant has been prejudiced.  I think in Pearson and other cases before it, the Court explained that the mere passage of time doesn't require automatic dismissal. And the reason is because the General Assembly in creating this right had conditioned its exercise on a defendant asserting it. So on the act itself, the code itself requires the defendant to take action when there are continuances sought by the prosecutor,  when there has been noncompliance. I'm sorry. Counsel, I understand that there are a lot of reasons why that would not necessarily prejudice the defendant, just because the trial goes beyond its term. But in this circumstance where the additional charges are filed after the expiration, I mean, it's a pretty clear prejudice to this defendant in this circumstance. Would you agree? So I think there's two components here. The defendant by statute was required to assert his right to the trial court before he went to trial. The statute, just as Walter Wright noted, says that the trial court itself cannot consider a claim that is raised after the trial has begun. And so even in Pearson, and Walker said in Pearson, if the defendant raises that claim in a post-trial version, the trial court is precluded from considering it altogether by statute. And then the General Assembly set forth that the consequence of that is waiver of the right. And the reason is because the General Assembly decided that it didn't want the public's interest in prosecution to be, you know, I can't think of the word, but it wanted the public to have the right to prosecution. And if the defendant wanted to avail himself of the benefits of the statute of courts, he has to raise the claim before trial, before going to trial. On the point about, I'm sorry, I lost my train of thought. Do you mind? I'm sorry. In this circumstance, because of this. Yes. So the other point is to the extent, so once it's waived, once the claim itself is waived, then it can't be considered further. It's no different than any other type of waiver. Here is a statutory waiver. But if there were a common law waiver, whether it was due to the defendant acquiescing, abandoning, agreeing, wherever the circumstances of a common law waiver, the result would be the same. A waiver bars your view. And the reason is because when a defendant waives the application of a rule, that means there has been no error. So you don't even get 2615 because when there's a waiver, there's no error. Now, even if we were to put that aside for a moment and discuss sort of the structural error component of this, if there's prejudice in a specific case, that's not relevant to the second-pronged plain error analysis. The Court has, the Court said in Moon, I think, I'm probably going to get these wrong, but paragraphs like 72 to 78, the Court rejected the notion that second-pronged plain error is really based on an individual defendant's prejudice. Structural error, second-pronged plain error, is a presumption of prejudice. And so it does, in every case, that we are just going to presume prejudice, regardless of the circumstances. And we can't say that in every case there will necessarily be prejudice. To the extent that a defendant raises a claim before trial and then forfeits it by not raising a post-trial motion, you know, we could reach the, this Court could then consider the question in the appropriate case on how first-pronged plain error works. But here, second-pronged plain error doesn't look at the defendant's case at all. It really looks at the nature of the error and whether it is structural. And on that point, it is certainly not structural because it is not a fundamental constitutional right. I don't recall which justice asked, but there is no statutory right that I am aware of where the Court has found it to be a structural error, where the right has been violated. All of the structural errors identified are fundamental constitutional errors. The Walker decision that was discussed specifically, I would note that, one, it predates sort of this Court's explanation of how second-pronged works as structural error. But it also, in that case, as Justice O'Rourke pointed out, the trial court had abused its discretion. And the result of that abuse of discretion was that the defendant was denied counsel. Effectively, counsel was unable to represent the defendant's interests. So it was akin to a fundamental constitutional right being denied, the denial of counsel. And so even Walker can be squared with how the Court has viewed second-pronged plain error. But in the end, in this case, the defendant did not file a pretrial motion to discharge. And by statute, the trial court could not consider an untimely motion because the claim was waived, and that appellate waiver continues on to the appeal because there has been no error. Unless the Court has any further questions, we ask the Court to affirm the appellate court's judgment. Thank you very much. And I'm sorry, but I'm going to jump around here. First, talking about Walker, I didn't, if I understand Walker correctly, there was no finding that there was the denial of the constitutional right to counsel. There was no investigation by this Court whether or not counsel was ineffective under either the chronic or any or stricter standards. And so there wasn't an underlying denial of a constitutional right to counsel in that case. And counsel, I believe, if I recall correctly, did conduct his or herself during the trial by cross-examining witnesses and making arguments before the jury and so on. And so I don't think there was a denial of counsel in Walker specifically. Going back to the admonishment issue, besides being told incorrectly about the mandatory supervisor lease term and consecutive sentencing, of course he was also told incorrectly that he was extended term eligible and that that was based on a specific prior conviction when that prior conviction did not exist and he was not extended term eligible, at least to the aggravated domestic battery charges. And although he was told that he could, or he articulated that he wanted to proceed pro se for the, in the first case because he wanted to file a bond motion and because he didn't like counsel's demeanor, these are not resolute reasons that would require him to be pro se no matter what admonishments he received. This isn't like a lot of cases reviewed by this Court where the defendant has a legitimate reason where he wants to proceed pro se that's not going to be tied to the admonishments he received, be that he wants to be the one, he or she wants to be the one presenting themselves to the jury and not hiding behind counsel or wanting to assert a speedy trial right and not wanting counsel to have continuances. And there's nothing like that on the record here where there's this reason to believe that the admonishments wouldn't matter. And the State also discussed his prior history and it is true he did have prior criminal history but there's no indication that he was self-represented in any of those cases or that he had a prior aggravated domestic battery. So even though he did have prior battery offenses and prior aggravated battery offenses, I don't believe there's any prior aggravated domestic batteries in his record so he wouldn't inherently understand the nature of those specific charges. Counsel, I'm not following your argument. What are you saying that the trial court should have done differently to ensure that he didn't proceed pro se? It sounds like you're saying the court should have ensured that this defendant didn't proceed pro se because he was confused. I'm not clear. Yes, Your Honor. So in this case I think the circuit court besides setting aside the accurate admonishments as to what a specific prison sentence would be, I would expect the circuit court to be able to advise him that he's not extended term eligible, that his mandatory supervisor with him would only be four years, and that there is a possible application of discretionary consecutive sentencing. But as to actually understanding the nature of the charges, when Mr. Markham expresses confusion as to what the charges are, I would expect the circuit court to actually confirm with him that he understands that, especially as to count one, that it was aggravated domestic battery. And once Mr. Markham asked that question, the circuit court then accepted it and moved on without making sure that Mr. Markham understood that particular admonishment when it was given. And these weren't short admonishments. The circuit court lumped together the reading of the charges along with a long list of penalties, and I think especially in this case, that's just simply too much for someone in Mr. Markham's position who has ---- Couldn't you take the opposite view that by adding, making sure that the defendant understood the long list of possible penalties that would enhance how important it would be for him to be represented by counsel? Well, I'm not saying that the circuit court shouldn't have instructed him about the long list of penalties. I think that the circuit court should have taken them separately and not included this very long list. And after reading this ---- How do you know that that would have made a difference? I'm just trying to get to what it is that you ---- I think we can agree that maybe the admonishments weren't as clear as they could be. But I'm trying to ask you to articulate to me more specifically what is it that you think the circuit court should have done that was so egregious that it would require a reversal. Yes, Your Honor. In this case, my position is the circuit court should have ---- Well, the rule actually requires the circuit court to make sure that Mr. Markham actually understands. To make sure he actually understands, the circuit court needed to use smaller admonishments due to Mr. Markham's background. He dropped out of high school and there's no indication that he had any degree of legal sophistication and use shorter admonishments so the record makes it clear that he actually understood the charges he was facing. That's my position. Turning to the speedy trial issues, Mr. Markham's position is that the legislature did not clearly make this, did not clearly make the pretrial motion a conditioned precedent. Can I ask you a question about that just so that we all understand what we're talking about? We know that the United States Supreme Court had, years ago, acknowledged that there are times where someone is held for a huge amount of time and has had no opportunity to defend themselves. There's not been a trial. This is a very fundamental violation of our American values. And then, I think, my sense of this, I think you'd agree with me, it was kind of amorphous. It didn't have a time frame or something. And so then states like Illinois adopted specific statutes to define what that means in their own state. Would you say that's kind of fair? So the legislature here created our statute that says that a person has to be brought to trial within 120 days. Other states have other times, but that's what the legislature said here with certain exceptions, et cetera. And then part of that legislative idea was that if that person was not brought to trial, they'd be released. Case over. It would be a really pretty dramatic relief. Here there's a videotaped confession in this brutal beating. But the legislature said this is so important. If you don't comply, if the state doesn't bring a person to trial within the time, they walk out the door. It's over. It's dismissed. It's very significant, this statute. And in doing that, then, the legislature created a process as to how this issue could be brought to the court, what had to be shown. I'm looking at section 114-1, motion to dismiss the charge. There are, like, 11 subsections to it as to how this is supposed to work. This is not just a casual kind of thing. And all of that is these 11 different ideas come into play when there has been a motion to dismiss filed. And then there's a hearing. And the state has to show all of these things. The defendant in response has to show all the certain things. And then it specifically says, any motion not filed within such time shall not be considered by the court. And, therefore, the grounds for all of that are way. Now, it sounds pretty clear what the legislature was looking for. They had these issues decided in the trial court in the moment. So, I mean, are you making, can you, but you want to say that this is more like a constitutional violation that could be brought any time. Does this fit into a constitutional violation? And I recognize that the constitutional right and the statutory right are not coextensive. But implicit in the appellate court decisions that I rely on is that they are so, that these rights are so closely tied together in a way that other statutory rights are not connected with their underlying constitutional rights. So I'm arguing for a speedy trial, in essence, a speedy trial exceptionalism to be applied in this case. And I look specifically to, again, Barker for that basis of the constitutional right, as you described, being so hard to define and so hard to apply that it requires, in essence, further definition by the legislatures. Thank you very much. Thank you. Thank you both for your argument. This case, agenda number two, number 128687, People of the State of Illinois v. Clinton T. Martin.